## Wolf, Appellant, v. Needleman.

Argued November 9, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William A. Goichman,* for appellants.

*Howard M. Girsh,* with him *Manuel Steinberg,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, March 22, 1966:

The jury returned a verdict for the defendant, and the trial Judge who saw and heard the witnesses refused to grant a new trial. From this Order plaintiff took this appeal.

Defendant-appellee and his passenger, whose testimony was believed by the jury which saw and heard the witnesses, testified that just before the accident defendant was driving his car westwardly on the north

side of Tremont Street at a rate of 20 to 25 miles an hour. After passing the intersection of Tremont Street with Revere Street, he noticed a group of little boys standing on the north curb of Tremont Street at a point between crossings, 50 to 75 feet west of Revere Street and only 20 feet away from him. At that moment the minor plaintiff, having picked up a ball near the north curb, suddenly ran out into the street, intending to throw the ball to a playmate. In order to avoid hitting the darting-out child, defendant instantly turned his car to the left and applied his brakes. At the moment of contact with the child, his automobile was just across the median line of Tremont Street. Furthermore, according to defendant's evidence, his car did not strike the child; on the contrary, the child, who testified that he never saw or heard defendant's car, ran into the right *side* of defendant's auto. Moreover, contrary to the testimony of two of plaintiff's playmates that defendant's auto ran into the minor plaintiff, they had previously informed the investigating police officer that the minor plaintiff had *run* into the right *side* of defendant's automobile.

Under all the evidence in this case, the charge of the trial Judge was both accurate and fair, and the cases relied upon by appellants as to the presumption of negligence arising from driving on the wrong side of the highway are clearly inapplicable.

We find no abuse of discretion or error of law.

Order affirmed.

Mr. Justice COHEN concurs in the result.

————

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

Five witnesses in this case testified that at the time of the accident, the defendant was operating his automobile on the wrong side of the highway. Yet the trial judge's charge made no reference to the law ap-

plicable to an extraordinary circumstance of this character.

In *Benner v. Weaver*, 394 Pa. 503, this Court said: "When a driver is on the wrong side of his road, there follows an ipso facto presumption of negligence against him, unless he can satisfactorily explain why he would be where maximum peril resides for himself and all those who legitimately are pursuing their course on their own side of the road."

The trial judge did say to the jury: "Upon all highways of sufficient width . . . the driver of a vehicle shall drive the same upon the right half of the highway, and shall drive as closely as possible to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway."

This, however, was not enough.

Of course, it is elementary that the plaintiff in a damage case always has the burden of proving that the defendant's negligence caused his injuries, but it is equally fundamental that the defendant must prove by preponderating evidence that the plaintiff was guilty of contributory negligence if it is in the case. Thus, there can be different burdens and different evidentiary obligations operating simultaneously during a trial. Varying phrases have developed around burdens of proof devolving upon a defendant in a trespass case. It has been said that the defendant is charged with "coming forth with the evidence," that "the burden of proof shifts," that the defendant "is charged with the burden of going forward with the evidence."

These are all rhetorical changes on a fundamental concept of law, namely, that when evidence adduced by the plaintiff establishes a prima facie case of negligence against the defendant, the latter must explain to the jury in a convincing manner that he was without fault, if he is to escape an adverse verdict. The motorist who drives on the wrong side of the highway

and strikes another person has as much a responsibility of exculpating himself from the resulting implication of negligence as an intruder in a melon patch has the obligation of explaining what he was doing in the patch, particularly if melons are missing.

What was Needleman doing in an eastbound lane when he was traveling westbound? Defendant's counsel contends that Needleman "was compelled to drive into the eastbound lane in an attempt to avoid the minor plaintiff." This could have been a plausible explanation and the jury may well have believed it, but if they did, they did so without adequate instructions from the trial judge. The judge treated this feature of the case quite casually in his charge. He failed to tell the jury of the burden of proof the defendant was required to meet. Did the defendant's testimony overcome the testimony of the five witnesses who saw him on the wrong side of the highway? The jury needed a lantern here in appraising the evidence. The trial judge provided the lantern and lit it, but he did not raise the wick high enough to provide the illumination required so that the jury could find its way to a proper verdict, in accordance with the law.

There was another error in the case.

During the charge the judge inadvertently referred to plaintiff's age at the time of the accident as 10. The defendant's counsel properly asked for a correction, since the boy was already 11 on the day of the mishap. The judge made the correction, but, like one putting too much sugar in one's coffee, he corrected too much. He said to the jury: "I did state, in passing upon his negligence, that you should judge his negligence on the basis of a ten year old child, whereas it should be the negligence of a boy over eleven years old, and that makes a difference because, as we know, children develop mentally as well as physically and are to be judged by the conduct of children of a similar

age, and the age in this case of the minor plaintiff was over eleven years."

Perhaps the trial judge oversweetened the coffee for the defendant by referring, in the very last paragraph of his charge, three times to negligence on the part of the plaintiff without some reference to the alleged negligence on the part of the defendant, but he completely upset the cup when he said that at the age of eleven a boy suddenly acquires the wisdom which tells him he should not play touch football on the streets, when this did not occur to him at the age of ten. Where there are no playgrounds, a boy's instinct for play will exert itself even on the lip of a volcano and boys must be accepted as boys and not as graybearded savants.

I dissent.